Walter GREEN and Lucy Green, individually and on behalf of their minor children Maggie May Green, Queen Esther Green, Bobbie Green, Roddy Green, Larry Green, Danny Green, Brenda Green and Sandra Green, all of Wilmington, Delaware, individually and on behalf of all others similarly situated, Plaintiffs,

v.

The DEPARTMENT OF PUBLIC WELFARE OF the STATE OF DELAWARE, Ronald E. Miller, Acting Director, Department of Public Welfare, State of Delaware, Charles W. Sigler, Chief of Program Operations, Department of Public Welfare, State of Delaware, Houston Wilson, Chairman of the Board, Department of Public Welfare, State of Delaware, and Elizabeth Wilson, New Castle County Administrator, Department of Public Welfare, State of Delaware, Defendants,

Patricia Smith, individually, and on behalf of her two minor, children, Jeffrey and Cheryl Smith, Intervening Plaintiff.

Civ. A. No. 3349.

United States District Court
D. Delaware.
June 28, 1967.

tiffs, husband and wife, against the Delaware Department of Public Welfare and certain of its administrative personnel ("defendants"). Plaintiffs seek a declaration that the residency provisions of 31 Del.C. § 504[1] as amended and all regulations pertinent thereto are contrary to the Constitution of the United States and, further, ask that their enforcement be enjoined.[2]

Plaintiffs allege that they are members of a class "composed of citizens living in Delaware who have been denied assistance by the Department of Public Welfare of the State of Delaware on the ground that they have not been residents of Delaware for one year prior to their application for assistance."

It is averred that both plaintiffs are native born citizens of the United States and have eight minor children living with them. They have resided in Delaware since the month of July 1966 when they moved into the State so that the plaintiff-husband could take employment as a construction laborer. Since arriving he has been employed successively by two contractors. Nevertheless, because of bad weather and lay-offs after completion of construction jobs he has averaged less than $40.00 a week net income. Plaintiffs in December 1966 applied for and were granted public assistance in Delaware to supplement their income. However, it was terminated when they could not verify the residency requirement. In March of 1967 plaintiffs reapplied and were denied assistance because their residency in Delaware was for less than one year. They then unsuccessfully exhausted their administrative remedies under the Delaware statutes. Finally, it is alleged in plaintiffs' complaint that the one year residency requirement of the Delaware statutes violates the due process and equal protection provisions of the Fourteenth Amendment to the United States Constitution,

Harry A. Pogach, Director and Chief Attorney of Community Law Service of Wilmington and Charles L. Hellman, Washington, D. C., for plaintiffs and intervening plaintiff.

Ruth M. Ferrell, Deputy Atty. Gen., for defendants.

Before SEITZ, Circuit Judge, WRIGHT, Chief District Judge and LAYTON, District Judge.

SEITZ, Circuit Judge:

This is a class action for a declaratory judgment filed April 27, 1967 by plain-

---

I. Section 504 lists the categories of assistance available to needy persons of Delaware who have resided therein for at least one year immediately preceding the filing of their application, except that the one year limitation does not apply to medical care of such residents.

2. Jurisdiction of this three judge court is based on 28 U.S.C. §§ 2281 and 2284.

abridges the privileges and immunities provision of the same amendment, and constitutes a restriction of their right to move freely from state to state in violation of Article IV, Section 2 and the Fourteenth Amendment as well as the commerce clause, Article I, Section 8, Clause 3 of the United States Constitution.

Pursuant to Rule 23 of the Federal Rules of Civil Procedure the court entered an order determining that the action should be maintained as a class action and directed appropriate notices to the members of the class.

The defendants then filed an answer admitting the facts which we have here stated as averred in the complaint. However, they contend in their answer that the one year residence requirement does not violate any of the provisions of the United States Constitution.

Intervention was obtained on behalf of a wife who following separation from her non-resident husband came to Delaware less than one year ago in order to live with her sister. The plaintiffs, the intervening plaintiff, and the defendants filed motions for summary judgment. The pleadings were later supplemented with certain affidavits and depositions.

■ We turn to the motions. For ease of treatment we shall limit ourselves at this point to the original plaintiffs' case. We think it clear that as between the original plaintiffs and defendants there is no issue of material fact. The issue posed is one of law and it is therefore appropriate to decide this matter on the motions for summary judgment.

■ The plaintiffs have been living in Delaware since July 1966 and except for the one year "residence" requirement have fully complied with all the prerequisites to the receipt of public assistance under 31 Del.C. § 504 as amended.[3] Against this factual background we consider first the plaintiffs' argument that as to them and the class they represent the one year "residence" requirement violates the equal protection provision of the Fourteenth Amendment.[4]

■ Preliminarily, we note that the equal protection clause does not preclude all discrimination by a state but only invidious discrimination. The basis for the different treatment here, i. e., one year residency, does not appear to be inherently "suspect" in a constitutional sense, in contrast to certain classifications such as those based on race.[5] Thus, plaintiffs must shoulder the burden of showing that the classification based on residence does not have any reasonable justification. Or, stated another way, in order to upset the statutory classification here involved as in violation of the equal protection clause plaintiffs must show that it is not based on differences which are reasonably related to the purpose of the statute involved. See Morey v. Doud, 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1957). We turn to an analysis of the pertinent statutory provisions in the light of these constitutional principles.

■ We are of course here dealing with the State Public Assistance Code (31 Del.C. § 501 et seq.). In Section 501 it is declared to be the legislative intent that the purpose of the Code is,

3. The Budget Appropriations Act for the fiscal year commencing July 1, 1966 (55 Del.Laws Chap. 336, § 19) provides, inter alia, that no funds appropriated to the Department of Public Welfare shall be expended to give public assistance to any person who has not been an "official resident of the State of Delaware for a full year." There is thus no possibility that public funds are available to plaintiffs through reciprocity agreements with other states or through some other special arrangements.

4. We are cognizant of the fact that the Delaware residency requirements fall within the bounds permitted for federal financial participation under the Social Security Act. See, e. g., 42 U.S.C. §§ 302 and 602. However, this fact does not relieve us of the obligation to consider whether such residency requirements are violative of the Fourteenth Amendment.

5. See Loving v. Com. of Virginia, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (June 12, 1967).

inter alia, "to promote the welfare and happiness of all people of the State, by providing public assistance to all of its needy and distressed; that assistance shall be administered promptly and humanely with due regard for the preservation of family life * * *." Given this relevant portion of the stated legislative purpose, we consider first whether the one year residence requirement is reasonably related to its implementation.

It is evident to us that as to these families living in Delaware for less than one year the denial of public assistance fails to carry out the stated purposes for the Public Assistance Code. It in fact tends to frustrate them. The residency requirement prevents prompt assistance to some of the State's needy and distressed and to that extent is the antithesis of "humane." It also necessarily results in pressure on the solidarity of the family unit. Nor given these circumstances is it an acceptable answer to say that until they are here one year such persons are not a part of the state's needy and distressed. The discrimination based on length of residency thus finds no constitutional justification in the purpose declared in the statute itself.

We turn next to other possible purposes for the statutory distinction here drawn.

■ Its principal purpose, as suggested by defendants' counsel, is the State's desire to discourage needy persons from entering Delaware and thereby to protect the public purse. The case of People ex rel. Heydenreich v. Lyons, 374 Ill. 557, 30 N.E.2d 46, 132 A.L.R. 511 (1940), is cited by defendants for the proposition that a state may constitutionally discourage an influx of needy persons by imposing a residency requirement as a condition for receiving public assistance. We believe, however, that the subsequent Supreme Court case of Edwards v. People of State of California, 314 U.S. 160, 62 S.Ct. 164, 86 L.Ed. 119 (1941), although involving a different form of state action and different constitutional provisions, stamps such a ground as a constitutionally impermissible basis for separate state treatment. See particularly the concurring opinions of Mr. Justice Douglas and Mr. Justice Jackson. The protection of the public purse, no matter how worthy in the abstract, is not a permissible basis for differentiating between persons who otherwise possess the same status in their relationship to the State of Delaware.

■ Other purposes advanced to support the one year provision, such as a desire to assure eligibility for welfare benefits and thereby to avoid payments tainted with fraud or based on insufficient information, are of course legitimate ends. However, particularly in view of the consequences to persons in need, the one year residency requirement is not a sufficiently rational means for the attainment of such goals. Moreover, it is clearly implicit in 31 Del.C. § 507 that the defendants have a reasonable period to process applications for assistance and thus satisfy themselves that the eligibility requirements are fulfilled.

■ Finally, it is possible that the legislature intended the statute's "durational residence requirement" to serve the purpose of confining assistance to domiciliaries of Delaware. A domiciliary under Delaware common law is defined as one who is physically present in Delaware with an intention to remain indefinitely.[6] It can be argued that the one year period provides an objective legislative test of such an intention. However, the one year residency requirement prevents many applicants from obtaining assistance even though they are clearly living in Delaware with an intention to remain indefinitely; witness the plaintiffs. In the light of the often immediate need of these persons for food, clothing and shelter, we think that the one year period is a constitutionally unreasonable test for determining the "intention" aspect of domicile, assuming

---

6. New York Trust Co. v. Riley, 24 Del.Ch. 354, 16 A.2d 772 (1940), aff. 315 U.S. 343, 62 S.Ct. 608, 86 L.Ed. 885 (1942).

such was its purpose. More accurate alternatives are available to ascertain an individual's true intentions without exacting the protracted waiting period with its dire economic and social consequences to certain individuals living in the State. In view of this conclusion we do not reach the difficult question whether it is a constitutionally valid purpose for a state to restrict public benefits to its own domiciliaries.

The defendants place great reliance on the case of Drueding v. Devlin, 234 F. Supp. 721 (D.Md.1964), aff. per curiam, 380 U.S. 125, 85 S.Ct. 807, 13 L.Ed.2d 792 (1965). In that case a Maryland one year residency requirement for voting, inter alia, in national elections was upheld under the equal protection clause. It was recognized that the purposes for the requirement were to identify the voter, to protect against fraud in voting, and to insure that the voter will become in fact a member of the community and thus have a common interest in all matters pertaining to its government. Given these purposes, the court felt that it could not say that the discrimination was irrational. But certainly it takes little logic to conclude that the need for food, clothing and lodging has an aspect of immediacy which differentiates it in kind from the right to vote. It is not amiss to note that a one year residency requirement tends most often either to shift responsibility to private agencies or to force families otherwise qualified for public assistance to live under the most "deprived" conditions until the year is up. Neither consequence would seem to commend the residence distinction as drawn in the act.

We therefore conclude that the one year residency requirement in 31 Del.C. § 504 and other provisions of the Code relevant thereto create an invidious distinction as to the class represented by plaintiffs and are therefore in violation of the equal protection clause.[7]

Since this is a class action under Rule 23 of the Federal Rules of Civil Procedure, we must define the class for whose benefit the judgment will be entered. As already noted, the undisputed facts compel the inference that plaintiffs at the time they applied for assistance were living in Delaware with the intent to remain indefinitely. It therefore can be said that they fulfilled the requirements for Delaware domiciliaries. Thus, even if "residence" as used in the welfare statute, the one year provision apart, is equated with domicile,[8] these plaintiffs are eligible for public assistance. Accordingly, we conclude that the class for whose benefit the judgment will be entered embraces all those persons who, meeting the other requirements, are living in Delaware with an intention to remain indefinitely.

As to intervenor, undisputed facts in the record indicate that at the time she applied for assistance she also was living in Delaware with the intention to remain indefinitely. However, her husband continued to live elsewhere. Defendants' counsel suggested after argument that she wanted to reserve for possible later briefing the question whether such a married person could legally obtain an independent residential status. If on this basis defendants desire to pursue the issue as to the intervenor's right to participate as a member

---

7. Compare Thompson v. Shapiro, 270 F. Supp. 331 (June 19, 1967), in which a three-judge federal district court recently found a somewhat similar Connecticut statute unconstitutional, inter alia, under the equal protection clause. But see Harrell v. Bd. of Com'rs of D. C., 269 F.Supp. 919 (June 22, 1967), in which a District Court judge in the District of Columbia upheld the constitutionality of a one year residence requirement.

8. Compare Ainscow v. Alexander, 28 Del. Ch. 545, 39 A.2d 54 (1944). We think the Delaware statutory definition of domicile for an adult (13 Del.C. § 1701), whatever its ambit, clearly does not mean that a person cannot acquire a domicile in Delaware unless he has lived there two successive years. Even if it was so intended, then for the reasons already given we do not think it can constitutionally be applied in the administration of public assistance.

of the defined class they should promptly so advise the court.

We need not decide the other constitutional issues advanced by plaintiffs. In addition, we emphasize that our definition of the class is not intended to indicate any view as to whether a state could constitutionally confine the benefits of its public assistance programs to its own domiciliaries.

An appropriate order will be entered granting plaintiffs' motion for summary judgment. It follows that defendants' motion for summary judgment against plaintiffs will be denied. As to the intervenor decision on the cross motions for summary judgment will await determination of her right to participate as a member of the defined class.