Leila **WAGGONER**, Individually and Lenore Marie Waggoner, Anita Diane Waggoner, Susan Elaine Waggoner, Theresa Anne Waggoner, Ronald James Waggoner, Jamie Leah Waggoner, and Sharon Michelle Waggoner, by Leila Waggoner, their mother and next friend, all of Pittsburgh, Pennsylvania, individually and on behalf of all others similarly situated, Plaintiffs,

v.

Max **ROSENN**, Secretary of Public Welfare of the Commonwealth of Pennsylvania, Defendant.

**Civ. A. No. 9841.**

United States District Court
M. D. Pennsylvania.

Jan. 29, 1968.

H. David Rothman, Robert D. Repasky, Pittsburgh, Pa., for plaintiff.

William Sennett, Atty. Gen., of Pa., Edgar R. Casper, Deputy Atty. Gen. of Pa., Edward Friedman, Counsel Gen., Harrisburg, Pa., for defendant.

## OPINION

Before KALODNER, Circuit Judge, SHERIDAN, Chief Judge, and FOLLMER, District Judge.

KALODNER, Circuit Judge.

In this class action plaintiffs challenge the constitutionality of the one-year residency requirement imposed by Section 432(6) of the Pennsylvania Public Welfare Code, Act of June 13, 1967 P.L. —— (Act No. 21), as a condition of eligibility for public assistance grants to needy families with children.[1] They urge that the stated residency requirement (1) denies them due process, and equal protection of the laws accorded by the Fifth and Fourteenth Amendments to the Constitution, and (2) abridge their "right to move freely from state to state" in violation of Art. I, Section 8 of the Constitution.

Defendant denies that the residency requirement of the Pennsylvania Public Welfare Code deprives plaintiffs of their constitutional rights as alleged and moves to dismiss the complaint for failure to state a claim upon which relief can be granted, Rule 12(b) (6), Fed.Rules Civ.Proc., 28 U.S.C.A., or, in the alternative, moves for summary judgment in his favor on the ground that there is no genuine issue as to any material fact. Rule 56. Ibid.

1. Section 432(6) provides:
"Assistance may be granted only to or in behalf of a person residing in Pennsylvania who (i) has resided therein for at least one year immediately preceding the date of application; (ii) last resided in a state which, by law, regulation or reciprocal agreement with Pennsylvania, grants public assistance to or in behalf of a person who has resided in such state for less than one year; (iii) is a married woman residing with a husband who meets the requirement prescribed in subclause (i) or (ii) of this clause; or (iv) is a child less than one year of age whose parent, or relative with whom he is residing, meets the requirement prescribed in subclause (i), (ii) or (iii) of this clause or resided in Pennsylvania for at least one year immediately preceding the child's birth. Needy persons who do not meet any of the requirements stated in this clause and who are transients or without residence in any state, may be granted assistance in accordance with rules regulations, and standards established by the department."

Applicable to our consideration of the issues presented are these settled principles to which a federal court must adhere in determining whether a statute contravenes Constitutional guarantees:

" * * * [T]he Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others", and "The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective." [2]

"State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality" and "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." [3]

"Every presumption is to be indulged in favor of faithful compliance by Congress with the mandates of the fundamental law", and "Courts are reluctant to adjudge any statute in contravention of them." [4]

"One who assails the classification" in a state statute "must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary." [5]

"A statute is not invalid under the Constitution because it might have gone farther than it did * * *." [6]

"* * * 'reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind.' " [7]

"Normally, the widest discretion is allowed the legislative judgment in determining whether to attack some, rather than all, of the manifestations of the evil aimed at; and normally that judgment is given the benefit of every conceivable circumstance which might suffice to characterize the classification as reasonable rather than arbitrary and invidious." [8]

Federal courts are not endowed with "authority to determine whether the Congressional [legislative] judgment * * * is sound or equitable, or whether it comports well or ill with the purposes of the Act", and the "wisdom or unwisdom" of a statute is an irrelevant factor in determining the issue of its constitutionality. [9]

 The distilled essence of the stated principles is that legislatures are endowed with a wide range of discretion in enacting laws which affect some of its residents differently from others; [10] "every presumption" of constitutionality must be accorded by courts to a challenged law and the challenger bears the burden of proving that the law is irrational and "essentially arbitrary"; a statutory discrimination will not be declared unconstitutional "if any state of facts reasonably may be conceived to justify it"; the circumstance that a law "might have gone farther than it did" in remedying a public social problem does not make it unconstitutional; and the "wisdom or unwisdom", soundness or

---

2. McGowan v. Maryland, 366 U.S. 420, 425, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961).

3. Id. 425–426, 81 S.Ct. 1105.

4. United States v. Butler, 297 U.S. 1, 67, 56 S.Ct. 312, 320, 80 L.Ed. 477 (1936).

5. Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78–79, 31 S.Ct. 337, 340, 55 L.Ed. 369 (1911).

6. Roschen v. Ward, 279 U.S. 337, 339, 49 S.Ct. 336, 73 L.Ed. 722 (1929).

7. Morey v. Doud, 354 U.S. 457, 465, 77 S.Ct. 1344, 1350, 1 L.Ed.2d 1485 (1957).

8. McLaughlin v. State of Florida, 379 U.S. 184, 191, 85 S.Ct. 283, 288, 13 L.Ed.2d 222 (1964).

9. Flemming v. Nestor, 363 U.S. 603, 611, 80 S.Ct. 1367, 1373, 4 L.Ed.2d 1435 (1960).

10. Except in instances where the differences are based on race, color or religion. Loving v. Commonwealth of Virginia, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967).

unsoundness of the legislative judgment are irrelevant considerations in determining the issue of constitutionality.

Applying the principles stated to the instant situation, we are of the opinion that the plaintiffs have failed to rebut the presumption of constitutionality of the challenged Pennsylvania statute by a "showing" (1) that "it does not rest upon any reasonable basis, but is essentially arbitrary", Lindsley v. Natural Carbonic Gas Co., 320 U.S. 61, 79, 31 S. Ct. 337, 340 (1911); and (2) that the Pennsylvania Legislature transgressed its permissible "wide scope of discretion" in enacting laws which affect some groups of citizens differently than others", McGowan v. State of Maryland, 366 U.S. 420, 425, 81 S.Ct. 1101 (1961).

The following "state of facts reasonably may be conceived to justify" [11] the challenged statutory discrimination.

The Pennsylvania Legislature annually enacts a budget for the following year which must limit the total of its appropriations to its estimated annual tax revenue, inasmuch as Pennsylvania's Constitution limits the Commonwealth's borrowing capacity to $1,000,000.

The Pennsylvania Legislature in its annual budget-making is required to make such an appropriation for public assistance as can be reasonably and intelligently estimated on the basis of these factors:

1. The estimated yield of state taxes which are the sole source of Pennsylvania's public assistance funds. The Pennsylvania Legislature appropriated $199,800,000 of state revenues for public assistance grants for the fiscal year ending June 30, 1968—a significant percentage of the Commonwealth's annual budget.

2. The number of its residents currently receiving public assistance grants. They include needy families with dependent children, indigent aged and blind, permanently disabled persons between the ages of 18 and 64, and those who need assistance in the payment of bills for in-patient hospital and nursing home care, doctor, dentist, nursing and drug expenses. [12]

3. Increase in cost-of-living expenses of those on public assistance rolls which make necessary increased allotments.

4. Increase in the number of those receiving indigent aged assistance in view of the extended life expectancy experienced in recent years.

It is a conceivable fact that in light of the foregoing factors the Pennsylvania Legislature enacted the one-year residence eligibility requirement to serve *predictive purposes* in making its appropriations for public assistance.

█ The foregoing establishes that the Pennsylvania one-year residence eligibility requirement "cannot be condemned as so lacking in rational justification as to offend due process". Fleming v. Nestor, 363 U.S. 603, 612, 80 S.Ct. 1367, 1373 (1960). In that case the Supreme Court explicitly stated, at page 612, 80 S.Ct. at page 1373 that the factor of residence "can be of obvious relevance to the question of eligibility". It did so in ruling constitutional Section 202(n) of the Social Security Act, 42 U. S.C.A. § 402(n), which provides for termination of old-age, survivor, and disability insurance benefits payable to, or in certain cases in respect of, an alien individual who is deported under § 241(a) of the Immigration and Nationality Act, 8 U.S.C.A. § 1251(a), on any one of certain grounds specified in § 202(n).

It is pertinent to call attention to the fact that Congress in enacting the Social Security Act provided, in Section 202(t),

---

11. McGowan v. State of Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105 (1961).

12. The skyrocketing increase in hospitalization and medical expense during the past two years alone is evidenced by the fact that the legislative allowance for these items alone leaped from $38,-600,000 in the fiscal year ending June 30, 1967 to $61,200,000 for the fiscal year ending June 30, 1968.

42 U.S.C.A. § 402(t), for termination of benefits payable under the Act to any alien beneficiary who had resided outside the United States for more than six months.

Of greater moment here is the fact that Congress, in enacting legislation providing for federal contributions to state-administered public assistance programs, provided that states may establish a one-year residence eligibility requirement.[13] Thirty-nine states of the Union have enacted a one-year residence requirement as a condition of eligibility to qualify for public assistance grants to needy families with children, similar to the Pennsylvania provision, and Congress has done so in the District of Columbia Public Assistance Act of 1962.[14]

The one-year residence requirement in the Connecticut, Delaware, Pennsylvania and District of Columbia acts has been ruled unconstitutional by three-judge District Courts in 1967: Thompson v. Shapiro, 270 F.Supp. 331 (D.Conn.); Green v. Department of Public Welfare, 270 F.Supp. 173 (D.Del.); Smith v. Reynolds, 277 F.Supp. 65 (E.D.Pa.); Harrell v. Tobriner, 279 F.Supp. 22 (D. D.C.). The court was unanimous only in *Green*; dissenting opinions were filed in the other cases cited. It may be noted that the writer of this opinion dissented in Smith v. Reynolds, and that Chief Judge Sheridan, who is here dissenting, was a member of the majority in that case.[15]

We have taken into consideration the contrary views expressed in the foregoing cases. We can only say that the courts therein have substituted their judgment for that of the legislatures of forty states and the Congress of the United States as expressed in the enactment of the District of Columbia Public Assistance Act and Section 602(b), 42

U.S.C.A. of the Social Security Act, which, in providing for federal contributions to state-administered public assistance programs specified that states may establish a one-year residence eligibility requirement. We can only say that we regard the substitution of judicial judgment for that of legislative judgment as nothing less than judicial usurpation of the legislative function in disregard of the doctrine of separation of powers so firmly established since the founding of our Republic, and of the teaching of numerous decisions of the Supreme Court.

■ There remains this, too, to be said, with respect to the plaintiffs' asserted claim that the one-year residence eligibility requirement is unconstitutional because it abridges their right of freedom to travel from one state to another in contravention of the interstate commerce clause of the Constitution, Article I, Section 8.

In our opinion this claim is so specious and unfounded that it does not merit extended discussion. It is only necessary to say that the Pennsylvania statute does not prohibit travel into the Commonwealth, as evidenced by the fact that the plaintiffs in the instant case were freely permitted entry. The fact that the one-year eligibility requirement may operate to affect *a decision to travel* into Pennsylvania cannot by any stretch of the imagination be construed as a "statutory" bar to travel.

For the reasons stated we hold that the one-year residence requirement as a condition of eligibility for public assistance grants to needy families, provided by Section 432(6) of the Pennsylvania Public Welfare Code, Act of June 13, 1967, is constitutional. The plaintiffs' complaint will be dismissed for failure to state a claim upon which relief can be granted.

SHERIDAN, Chief Judge, dissents.

13. Section 602(b), 42 U.S.C.A.

14. Title 3, Chapter 2, D.C.Code, § 3–203(a) (b) (1967). "Eligibility for public assistance", enacted October 15, 1962.

15. The Supreme Court of the United States on January 15, 1968 granted review in Thompson v. Shapiro, 270 F. Supp. 331 (D.Conn.1967), sub. nom. Shapiro v. Thompson, 392 U.S. 920, 88 S.Ct. 2272, 20 L.Ed.2d 1381.