John P. HASSAN, Plaintiff,

v.

TOWN OF EAST HAMPTON et al., Defendants.

No. 78 C 1432.

United States District Court, E. D. New York.

May 6, 1980.

Community Legal Assistance Corp. by Marjorie Mintzer, Hempstead, N. Y., for plaintiff.

Smith, Finkelstein, Lundberg, Crimmins & Yakaboski, Riverhead, N. Y., for defendants.

## MEMORANDUM AND ORDER

GEORGE C. PRATT, District Judge:

Plaintiff, seeking declaratory, injunctive, and monetary relief, commenced this action pursuant to 42 U.S.C. § 1983 alleging that Ordinance 27 of the Town of East Hampton's Code of Ordinances is unconstitutional. Plaintiff now moves for summary judgment pursuant to FRCP 56 on the ground that the ordinance violates the equal protection clause of the fourteenth amendment by requiring one year of residency in the town as a condition to obtaining a shellfish license. Plaintiff argues that the ordinance is unconstitutional because it impacts upon his fundamental right to travel in violation of the equal protection clause of the fourteenth amendment.

The relevant facts are not in dispute. Plaintiff, a 45 year old disabled veteran whose sole means of support was his disability pension, moved to East Hampton from Rhode Island in November, 1977. Although plaintiff had no shellfishing experience prior to moving to East Hampton, he had completed a two year course in commercial fishing at the University of Rhode Island and had applied for a loan from the Small

Business Administration to purchase a fishing boat. His application to the Town of East Hampton for a license to shellfish was denied because he did not meet the ordinance's one year residency requirement. Plaintiff then commenced this action.

The license was to take shellfish from underwater lands that are held by town trustees. These trustees, elected biannually, are an entity separate from the town board. They derive their rights, powers and title to the lands from the King of England by virtue of the Dongan Patent of 1686 and hold the land in trust for the people of East Hampton. The relationship between the trustees and the town board is defined to some extent by the New York Town Law which empowers the town board to regulate the taking of shellfish but conditions its consideration of any regulatory ordinance on the prior written application of the trustees. N.Y. Town Law § 130(18)(b).

Two sections of Ordinance 27 are relevant to the issues of this action: § 3 prohibits shellfishing in East Hampton waters without a license and restricts the issuance of a license to residents; § 1 defines a resident as someone who "has, during the period of not less than 12 months immediately preceding the date of his application for a license [to shellfish], either maintained or leased or owned a permanent abode within the Town of East Hampton". Plaintiff asserts that the one year residence requirement for a shellfish license unconstitutionally discriminates between newly arrived residents and long time residents.

Defendants argue (1) that the court should abstain from deciding the case; (2) that plaintiff does not state a cause of action under § 1983 against the trustees because the trustees were not acting under color of state law; (3) that the proper standard of equal protection review is the traditional rational basis test; and (4) that the ordinance is constitutional under any standard of equal protection review because it is justified by compelling state interests.

## I. *Abstention*

■ At the outset, defendants request the court to abstain from deciding this case until the New York state courts give a definitive answer to the question of whether the East Hampton shellfish ordinance, a local law, is invalid as inconsistent with § 13–0311(1) of the New York Environmental Conservation Law, a general law. Defendants argue that by waiting until the state law issues are definitively resolved by the New York courts, the court may avoid reaching the constitutional issues presented in this action. *See Railroad Commission of Texas v. Pullman Company,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Because the law of New York is settled on the preemption issue, however, the court need not abstain.

Local laws which are inconsistent with general state law are frequently invalid. New York State Constitution Article IX, § 2(c); New York Municipal Home Rule Law § 10(1)(i); *People v. Cook,* 34 N.Y.2d 100, 356 N.Y.S.2d 259, 312 N.E.2d 452 (1974). New York Municipal Home Rule Law § 10(1)(ii)(d)(3), however, gives towns the power to amend or supersede "any provision of the town law relating to the property, affairs of government of the town * * * notwithstanding that such provision is a general law, unless the legislature expressly shall have prohibited adoption of such a local law."

■ Here, the East Hampton ordinance seeks to regulate the taking of shellfish from lands held by town trustees. Accordingly, the ordinance, as one which "relate[s] to the property, affairs or government of the town", may validly amend or supersede the New York Town Law on the same subject unless the legislature has expressly withheld such authority from the towns. New York Municipal Home Rule Law § 10(1)(ii)(d)(3). Far from prohibiting towns from acting with respect to their shellfish, the New York state legislature has clearly and specifically delegated regulatory power over the taking of shellfish to towns which own underwater lands within their borders. New York State Town Law

§ 130(18)(e); *Sloup v. Town of Islip*, 78 Misc.2d 366, 356 N.Y.S.2d 742, 745–46 (Sup.Ct. Suffolk Co. 1975). *See also, People v. Miller*, 260 N.Y. 585, 184 N.E. 103 (1932); *Seacoast Products, Inc. v. Glen Cove*, 50 A.D.2d 579, 374 N.Y.S.2d 702, 704 (2nd Dept. 1975). Thus, the adoption of the shellfishing ordinance by East Hampton was a valid exercise of town authority and the ordinance is not preempted by § 13–0311(1) of the New York Environmental Conservation Law.

Since the law of New York is settled on the question of preemption, *Pullman* abstention is inappropriate, and the court turns to a consideration of the merits of plaintiff's constitutional claims.

## II. *State Action*

In order for plaintiff to state a cause of action under § 1983 the challenged conduct must have been "under color of state law". 42 U.S.C. § 1983. Defendants argue that the trustees' acts cannot constitute state action under § 1983 because the lands are privately owned. Although legal title to the town's underwater lands is held by the trustees, the lands are held by the trustees for the benefit of the people of the town, the trustees are elected by the voters of the town, and regulations for the trusteed lands are established through formal legislation by the town board enacted only on request of the trustees.

■ It is well settled that § 1983, which was enacted to enforce the fourteenth amendment, does not regulate purely private conduct. Nahmad, *Civil Rights & Civil Liberties Litigation* § 2.04 at 38. The state action requirement of § 1983, however, does not necessarily mean that defendants must be state or local officials. Even assuming that these elected trustees are not public officials, nevertheless for "state action" "[i]t is enough that [they be] willful participant[s] in joint activity with the State or its agents." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 1606, 26 L.Ed.2d 142 (1970), quoting *U.S. v. Price*, 383 U.S. 787, 794, 86 S.Ct. 1152, 1156, 16 L.Ed.2d 267 (1966). In short,

when otherwise private persons act jointly with state officials all persons engaged in the challenged conduct act under color of state law for the purposes of 1983. *Adickes v. S. H. Kress & Co., supra. See also* Nahmad, *Civil Rights & Civil Liberties Litigation* § 2.04 at 39.

■ Here, it is clear that the town trustees were not engaged in purely private conduct. Defendants acknowledge the joint nature of the activities in question and "the cooperation [between the town board and the trustees] required for enforcement and funding" of shellfishing regulatory schemes in that "[t]he ability of the Town Board to pass a shellfish ordinance is conditioned upon the trustees first making application for same." Defendants' memorandum at 11. Accordingly, the court determines that in applying for and obtaining enactment of Ordinance 27 the town trustees and the town board were acting jointly and together acted "under color of state law" for purposes of § 1983.

## III. *The Standard of Equal Protection Review*

There is no dispute that the effect of the statutory waiting period in Ordinance 27 is to create two classes of residents indistinguishable from each other, except that one group has resided in the town a year or more, and the second group has resided there for less than one year. Solely on the basis of this difference, the town determines to whom it will issue shellfish licenses.

Plaintiff having been disadvantaged by the classifications established by the ordinance, the court must determine if those classifications are based on a legitimately defensible difference. To do so, the court must first identify the proper standard of equal protection review to be applied. *Memorial Hospital v. Maricopa County*, 415 U.S. 250, 253, 94 S.Ct. 1076, 1079, 39 L.Ed.2d 214 (1974); *Dunn v. Blumstein*, 405 U.S. 330, 335, 92 S.Ct. 995, 999, 31 L.Ed.2d 274 (1972).

■ The traditional equal protection test requires that the statute be rationally related to a permissible governmental goal. *Lindsley v. Natural Carbonic Gas Company*, 220 U.S. 61, 78–79, 31 S.Ct. 337, 340–341, 55 L.Ed. 369 (1911). If a fundamental right is involved, however, the statutory classifications must be strictly scrutinized and will be constitutionally defensible only if they further a compelling governmental interest. L. Tribe, *American Constitutional Law*, § 16–7 at 1002.

Plaintiff argues that the court should apply a "strict scrutiny" standard of equal protection review in this case because the East Hampton ordinance impacts upon the fundamental right of interstate travel by discriminating against those who have recently moved to the town of East Hampton. Defendants, arguing that the ordinance does not have a substantial impact upon any fundamental right because it regulates only a small portion of the total shellfishing lands available to the shellfisherman of East Hampton, suggest that the proper standard of equal protection review is the traditional "rational basis" test.

Four major Supreme Court cases have considered the right to travel and the equal protection clause of the fourteenth amendment. In *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), the Court applied a strict scrutiny standard of equal protection review to strike a one year state residence requirement for welfare assistance. Rejecting the contention that a state should be permitted to deter the migration of indigents or limit state benefits to long term residents, the Court there reaffirmed the "constitutional concepts of personal liberty [which] require that all citizens be free to travel throughout the length and breadth of our land uninhibited by statutes, rules, or regulations which unreasonably burden or restrict this movement." 394 U.S. at 629, 89 S.Ct. at 1329. Further, while recognizing that states have a valid interest in preserving the fiscal integrity of state financed programs, the *Shapiro* court rejected an attempt to justify the durational residence requirements as necessary to advance administrative governmental objectives, holding that

In moving from State to State * * * appellees were exercising a constitutional right, and any classification which serves to penalize the exercise of that right, unless shown to be necessary to promote a *compelling* governmental interest is unconstitutional. 394 U.S. at 634, 89 S.Ct. at 1331 (emphasis in original).

The next major Supreme Court pronouncement on this issue came in *Dunn v. Blumstein*, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972), where the Court again applied the strict scrutiny test to invalidate a Tennessee statute which required an applicant to show one year of state residence and three months of county residence as a prerequisite to voter registration. Finding that "[d]urational residence laws impermissibly condition and penalize the right to travel by imposing their prohibitions on only those persons who have recently exercised that right", 405 U.S. at 342, 92 S.Ct. at 1003, the Court held the Tennessee voting statute unconstitutional because it "force[d] a person who wishes to travel and change residences to choose between travel and the basic right to vote". 405 U.S. at 342, 92 S.Ct. at 1003. The *Dunn* court then took the analysis one step further and found it insufficient for a state to merely show compelling interest when defending a constitutional attack on duration residence requirements. Rather, the Court placed a further requirement on the state:

In pursuing [its interests], the State cannot choose means that unnecessarily burden or restrict constitutionally protected activity. * * * If there are other, reasonable ways to achieve those goals with a lesser burden on constitutionally protected activity, a State may not choose the way of greater interference. If it acts at all, it must choose "less drastic means". 405 U.S. at 343, 92 S.Ct. at 1003 quoting *Shelton v. Tucker*, 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231 (1960).

In *Memorial Hospital v. Maricopa County*, 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d

214 (1974), the Court found unconstitutional an Arizona statute requiring one year of county residence as a condition to an indigent's receiving hospitalization or medical care at the county's expense. Conceding that the parameters of the *Shapiro* case were less than clearly defined, the Court applied a strict scrutiny standard of review, reasoning that "medical care is as much 'a basic necessity of life' to an indigent as welfare assistance". 415 U.S. at 259, 94 S.Ct. at 1082. In applying this high standard of equal protection review, the Court found that the county had not carried its "heavy burden of justification, or demonstrated that the State, in pursuing legitimate objectives, has chosen means which do not unnecessarily impinge on constitutionally protected interests". 415 U.S. at 269, 94 S.Ct. at 1088.

Most recently, in *Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975), the Supreme Court upheld the constitutionality of an Iowa statute imposing a one year residence requirement for commencing an action for divorce. There, the Court's analysis of the right to travel was not expressed in terms of equal protection standards, strict scrutiny or compelling state interests. Rather, the Court categorized the statutes found unconstitutional in *Shapiro, Dunn* and *Maricopa County* as statutes defended only on grounds of administrative convenience or budgetary considerations. 419 U.S. at 406, 95 S.Ct. at 560.

The Court then distinguished those earlier cases from *Sosna* in that Iowa's one year residence requirement was justified by the state's interest in "requiring that those who seek a divorce from [Iowa] courts be genuinely attached to the State, as well as a desire to insulate divorce decrees from the likelihood of collateral attack". 419 U.S. at 409, 95 S.Ct. at 562. The Court further distinguished the Iowa divorce statute from the durational residence requirements held unconstitutional in the earlier cases, on the ground that the Iowa statute did

> not irretrievably [foreclose the newly arrived resident] from obtaining some part of what she sought, as was the case with

the welfare recipients in Shapiro, the voters in Dunn, or the indigent patient in Maricopa County. [because s]he would eventually qualify for the same sort of adjudication which she demanded virtually upon her arrival in the State. 419 U.S. at 406, 95 S.Ct. at 561.

In dissent, Justice Marshall, joined by Justice Brennan, criticized the majority for its failure to apply a consistent equal protection analysis and suggested that the Iowa statute should have been subjected to the same strict scrutiny standard utilized in *Shapiro, Dunn* and *Memorial Hospital* "to determine whether it constitutes a reasonable means of furthering important interests asserted by the State". 419 U.S. at 420, 95 S.Ct. at 568 (Marshall, J. dissenting).

In the case now before the court, the East Hampton town shellfish ordinance impermissibly penalizes the exercise of the right to travel in much the same manner as the durational residence requirement considered in *Shapiro* in that new residents of East Hampton wishing to obtain a license to shellfish and pursue their living in East Hampton must wait one year to qualify. *See Shapiro v. Thompson*, 394 U.S. at 634, 89 S.Ct. at 1331; L. Tribe, *American Constitutional Law* § 16–7 at 1002. By imposing its conditions only on those persons who have recently taken up residence in the town, the East Hampton shellfish ordinance forces some persons who wish to move to East Hampton to choose between their constitutionally protected right to travel and their right to pursue a livelihood. *See Dunn v. Blumstein*, 405 U.S. at 342, 92 S.Ct. at 1003. Significantly, however, the vice of the challenged ordinance is not in the establishment of a residency requirement; rather, as the Supreme Court has stated, "[t]he residence requirement and the one–year waiting–period requirement are distinct and independent prerequisites", *Shapiro v. Thompson*, 394 U.S. at 636, 89 S.Ct. at 1332, and only the durational requirements are constitutionally suspect as burdensome on the right to travel. *Memorial Hospital v. Maricopa County*, 415 U.S. at 255, 94 S.Ct. at 1080; *Dunn v. Blumstein*, 405 U.S. at 342 n.13, 92 S.Ct. at 1003 n.13.

Defendants argue that the ordinance has only minimal impact upon the right to travel because the restrictions imposed apply to only a portion of the available shellfishing lands. Some courts, when faced with this issue, have noted the difficulty of determining whether a particular ordinance has sufficient impact on the right to travel to give rise to the more exacting form of equal protection review, *Shapiro v. Thompson*, 394 U.S. at 638 n.21, 89 S.Ct. at 1333 n.21; *Memorial Hospital v. Maricopa County*, 415 U.S. at 256–57, 94 S.Ct. at 1081–1082; *Cole v. Housing Authority of City of Newport*, 435 F.2d 807, 810–11 (CA1 1970), and the *Sosna* Court may have fueled the problem by refusing to apply a traditional equal protection analysis. *See Sosna v. Iowa*, 419 U.S. at 419–27, 95 S.Ct. at 567–571 (Marshall, J., dissenting).

Whatever difficulty other courts may have experienced on this issue, the level of impact of the East Hampton ordinance challenged here is clearly sufficient to trigger the strict scrutiny standard of equal protection review because the ordinance burdens a critical aspect of plaintiff's existence, his right to pursue his livelihood; a right that is as much "a basic necessity of life" as welfare assistance, non–emergency medical care and voting were found to be in earlier Supreme Court decisions. *Shapiro v. Thompson*, 394 U.S. at 627, 89 S.Ct. at 1327; *Memorial Hospital v. Maricopa County*, 415 U.S. at 259, 94 S.Ct. at 1082; *Dunn v. Blumstein*, 405 U.S. at 336, 92 S.Ct. at 999.

Moreover, the negative impact of the East Hampton ordinance is aggravated by the fact that it results in an irretrievable deprivation to plaintiff and persons similarly situated. Unlike the Iowa statute considered and upheld in *Sosna* which allows a patient Iowa petitioner to ultimately obtain the desired Iowa divorce adjudication, a similarly patient East Hampton shellfisherman cannot live in the town for one year and then regain the lost opportunity to pursue his livelihood for the statutory waiting period. *See Sosna v. Iowa*, 419 U.S. at 406, 95 S.Ct. at 560.

■ Of course, this case does not present, and the court offers no opinion as to the different impact analysis that would be required by an ordinance which established a non–durational residency requirement or only sought to regulate recreational shellfishing. *See Baldwin v. Montana Fish & Game Commission*, 436 U.S. 371, 98 S.Ct. 1852, 56 L.Ed.2d 354 (1978). The court now holds only that where, as here, an ordinance requires one year of residency as a condition to obtaining a commercial shellfishing license, the classifications established by the ordinance have sufficient impact upon the exercise of the fundamental right to interstate travel to trigger a strict scrutiny standard of equal protection review. *See* L. Tribe, *American Constitutional Law* § 13–12 at 766. Accordingly, the ordinance will be set aside as unconstitutional unless the Town of East Hampton can overcome its heavy burden of justification and show that the ordinance promotes a compelling state interest. *Shapiro v. Thompson*, 394 U.S. at 638, 89 S.Ct. at 1333; *Dunn v. Blumstein*, 405 U.S. at 342–43, 92 S.Ct. at 1003–1004; *Memorial Hospital v. Maricopa County*, 415 U.S. at 261–62, 94 S.Ct. at 1083–1084.

IV. *Applying the Strict Scrutiny Standard*

■ Plaintiff argues that the ordinance should be declared unconstitutional because state interests served by the ordinance do not satisfy the exacting standards of the compelling interest test. Defendants, however, urge that the durational residence requirement of the challenged ordinance furthers the state's compelling interest in (1) preserving and regulating the exploitation of important natural resources; and (2) the planning of municipal improvements.

*The Preservation of Natural Resources*

Defendants cite *Baldwin v. Montana Fish & Game Commission*, 436 U.S. 371, 98 S.Ct. 1852, 56 L.Ed.2d 354 (1978), for the proposition that states have important obligations to preserve natural resources. While it seems obvious that the states do have an important interest in conserving their limited natural resources, the Supreme Court's

holding in *Baldwin* in no way suggests that the state's interest here is compelling. Rather, the *Baldwin* case presented two significant differences from the issues at bar: first, the Montana statute regulated hunting by establishing licensing fee schedules which discriminated against non–residents in a manner that did not impose a durational residence requirement; and second, the statute in *Baldwin* did not purport to regulate anything more than recreational hunting. For these reasons, the Supreme Court properly determined that no fundamental rights were at issue in *Baldwin* and correctly applied the less demanding rational basis standard of equal protection review in upholding the constitutionality of the Montana statute. 436 U.S. at 390, 98 S.Ct. at 1863.

A state's "power to preserve and regulate the exploitation of an important resource" has been recognized. *Toomer v. Witsell*, 334 U.S. 385, 402, 68 S.Ct. 1156, 1165, 92 L.Ed. 1460 (1948); *Douglas v. Seacoast Products, Inc.*, 431 U.S. 265, 284, 97 S.Ct. 1740, 1751, 52 L.Ed.2d 304 (1977). Defendants, however, do not point to any case supporting their contention that a state's interest in conservation is sufficiently compelling to satisfy the strict scrutiny standard. Having considered the arguments of counsel and the applicable case law, the court determines that, as a matter of law, the town's conservation interest, while important, is not sufficiently compelling to overcome the exacting strict scrutiny standard of equal protection review.

Even if the court were to find the conservation interest here to be "compelling", the durational residence requirement would still be unconstitutional if the town could achieve its conservation goals by employing alternative measures that would cause little or no interference with constitutionally protected activity. *See Dunn v. Blumstein*, 405 U.S. at 343, 92 S.Ct. at 1003. Here, defendants argue that the one year residence requirement established by the ordinance is the least intrusive means of determining whether an individual intends to remain in East Hampton as a permanent resident, because the seasonal population patterns of the town make any other tests of permanency ineffective to insure that an applicant is a permanent resident. The court, however, finds this argument unpersuasive.

Defendants contend that the one year period of the ordinance provides an objective legislative test of permanency. East Hampton is primarily a vacation community at the east end of Long Island. The number of its summer residents far exceeds its year–round population. While preserving its shellfish resources for permanent residents is an objective with which plaintiff has no quarrel, he does complain of this objective legislative test which excludes the bona fide permanent resident who has not yet lived there for one year. The court is sympathetic to the problems presented by the seasonal residency patterns of East Hampton, but the durational aspect of this requirement must be carefully examined because it operates indiscriminately and denies the license applications of the transient and permanent residents alike. *Shapiro v. Thompson*, 394 U.S. at 636, 89 S.Ct. at 1332; *Green v. Delaware*, 270 F.Supp. 173, 177–78 (D.Del.1967). *See also* L. Tribe, *American Constitutional Law* § 16–7 at 1002.

It is significant that governmental entities often determine a person's permanent residence for the purpose of distributing governmental benefits or the exercise of political rights. The factors usually considered include the place the individual pays taxes, exercises his civil and political rights, and maintains real and personal property, *see* 1 J. Moore, *Federal Practice* ¶ 0.74[3.–3] at 707.64. The Town of East Hampton, which here argues its inability to determine a person's domicile, is itself often called upon to make similar determinations in other contexts.

In light of the important impact the ordinance has on a person's ability to pursue his livelihood and the availability of alternate means of reaching a decision on the permanence of town residents, the town cannot be said to be employing the least drastic means to achieve its avowed purposes. *Dunn v.*

*Blumstein*, 405 U.S. at 343, 92 S.Ct. at 1003; *Shelton v. Tucker*, 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231 (1960). One court, considering a similar factual situation, found, as this court does today, that governmental entities possess the ability to determine permanent residency without imposing a durational residency requirement, stating

> More accurate alternatives are available to ascertain an individual's true intentions [as to permanency] without exacting the protracted waiting period with its dire economic and social consequences to certain individuals living in the State. *Green v. Delaware*, 270 F.Supp. at 178.

*See also Memorial Hospital v. Maricopa County*, 415 U.S. at 267, 94 S.Ct. at 1086.

For all these reasons, the court determines that the state's interest in conservation, while important, does not constitute an interest sufficiently compelling to justify the ordinance's significant impact on the right to travel.

*The Planning of Municipal Improvements*

Defendants also argue that the one year residence requirement serves important planning and budgetary purposes because the town annually appropriates funds for a program of clam seeding for town lands. Although it is clear that these are valid governmental concerns, the town's interest in these administrative problems is insufficient to overcome the exacting standards of the compelling interest test which places a "heavy burden of justification" on defendants. *Memorial Hospital v. Maricopa County*, 415 U.S. at 263, 94 S.Ct. at 1084.

█ Moreover, such interests in administrative convenience and efficiency have been uniformly rejected when the strict scrutiny standard of equal protection review is applied, *Shapiro v. Thompson*, 394 U.S. at 636, 89 S.Ct. at 1332; *Dunn v. Blumstein*, 405 U.S. at 342–43, 92 S.Ct. at 1003–1004, because these concerns can usually be equally well served by any number of less intrusive schemes. *See Dunn v. Blumstein*, 405 U.S. at 343, 92 S.Ct. at 1003; *Shelton v. Tucker*, 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231 (1960) (discus-

sion above). Accordingly, the court determines that while the town has a valid interest in the administrative aspects of planning and financing town improvements, that interest does not constitute a compelling state interest.

*Conclusion*

For all the above reasons, plaintiff's motion for summary judgment is granted to the extent that it is

ORDERED AND ADJUDGED that § 1 of Ordinance 27 of the Town of East Hampton's Code of Ordinances, entitled "Definitions", is hereby declared unconstitutional and void insofar as it defines a resident as someone who has maintained or leased or owned a permanent abode within the Town of East Hampton for a period of 12 months; and that

The Town of East Hampton, its officers and employees are permanently enjoined from enforcing § 1 of Ordinance 27 of the Town of East Hampton's Code of Ordinances, which defines a resident as someone who has maintained or leased or owned a permanent abode within the Town of East Hampton for a period of 12 months.

█ Turning next to plaintiff's request for compensatory and punitive damages for the enactment and application of Ordinance 27, damages are not available in a § 1983 action against the individual trustees or the members of the town board who acted in good faith and in their official capacities, *Procunier v. Navarette*, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978); *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), but may be available against the town itself. *Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980).

On the record before the court the individual defendant's good faith in enacting Ordinance 27 cannot be questioned. This area of constitutional law is unsettled and rapidly changing. No case has been cited to the court deciding precisely this issue. Therefore, the defendants could not as a matter of law have known that the ordi-

nance would result in a deprivation of plaintiff's constitutional right. Accordingly, plaintiff's request for damages from the individual defendants must be denied as a matter of law. *Procunier v. Navarette, supra*, 434 U.S. at 562–66, 98 S.Ct. at 859–862; *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975).

Plaintiff's claim for damages against the Town of East Hampton, which is not subject to the good faith immunity defense that bars recovery as against the individual defendants, *Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), presents a question of fact as to the amount of the damages.

Accordingly, plaintiff's motion for summary judgment is (1) granted with respect to the declaratory and injunctive relief sought; (2) denied with respect to the damages sought against the individual defendants; (3) granted with respect to the liability of the Town of East Hampton; and (4) denied with respect to the amount of damages to be recovered against the municipal defendant. The complaint is dismissed as to plaintiff's damage claims against the individual defendants.

The parties are directed to confer and if possible agree as to the amount of damages to be paid by the town. Absent a stipulation as to damages, a status conference will be held on May 26, 1980 at 9:00 a. m. to establish a schedule for trial. Final judgment covering all aspects of the case will be entered after damages have been determined.

SO ORDERED.