Juanita SMITH, Individually, and by her, her minor children, John Smith, Tabitha Miller, Sophia Paynter, William Paynter, Voncell Paynter, on behalf of themselves and all others similarly situated

v.

Roger A. REYNOLDS, Mayer I. Blum, Herbert R. Cain, Jr., Katherine M. Kallick, Rosalie Klein, Alfred J. Laupheimer, Edward O'Malley, Jr., Norman Silverman, Julia L. Rubel, constituting the Philadelphia County Board of Assistance, William P. Sailer, its Executive Director, Max D. Rosenn, Secretary of the Department of Public Welfare of the Commonwealth of Pennsylvania, William C. Sennett, Attorney General of the Commonwealth of Pennsylvania.

Civ. A. No. 42419.

United States District Court
E. D. Pennsylvania.

Dec. 18, 1967.

Probable Jurisdiction Noted
March 4, 1968.

See 88 S.Ct. 1054.

Thomas K. Gilhool, Mark K. Joseph, Philadelphia, Pa., for plaintiffs, Paul Bender, David H. Wice, Philadelphia, Pa., Edward V. Sparer, Jonathan Weiss, New York City, of counsel.

Edgar R. Casper, Deputy Atty. Gen., Edward Friedman, Counsel General, William C. Sennett, Atty. Gen., Harrisburg, Pa., for defendants.

Before HARRY E. KALODNER, Circuit Judge, and MICHAEL H. SHERIDAN, and JOSEPH S. LORD, III, District Judges.

## OPINION

JOSEPH S. LORD, III, District Judge.

■ This class action challenges the constitutional validity of a Pennsylvania statutory provision which requires applicants for public welfare to have resided in the State for a period of one year immediately preceding the date of application for assistance. The members of the class are citizens of the United States and bona fide residents of Pennsylvania who would otherwise be qualified for public assistance but for the fact that they have not resided in Pennsylvania for a period of one year. We hold that the residence requirement, as presently administered, constitutes a denial of "equal protection· of the laws" to members of the class, and that accordingly, Section 432(6) of the "Public Welfare Code," Act of June 13, 1967 P.L. —— (Act No. 21)[1] is void and may no longer be enforced.

We are aided in our conclusion by full evidentiary hearings. Plaintiffs' evidence showed that the requirement of one year's residence as a condition to the receipt of public assistance has no logical basis and is wholly arbitrary in its application to needy residents of the

Commonwealth. The Attorney General of Pennsylvania, far from disputing this evidence, openly embraced plaintiffs' proofs, adopting the testimony of the expert witnesses who were produced, while introducing no evidence of his own.[2]

Thus, the uncontradicted evidence is to the effect that:

(1) The one-year residence requirement does not necessarily prevent migration to the State of impoverished individuals, nor would the abolition of the requirement enhance the attractiveness of the Commonwealth to such persons. Thus, there would be no noticeable increase in the influx of newcomers, poor and otherwise, if the requirement were deleted.

(2) Those persons who do come to Pennsylvania and find themselves in need of public assistance within the first year of their arrival do not, to any significant extent, emigrate to the State for the purpose of obtaining such aid. Although the fact that they may not at present obtain welfare benefits may tend to deter or discourage migration to the State, there is concededly no competent evidence that it does so in fact, nor is there evidence that newcomers, once arrived, depart once they discover their subordinate status. Those who come into the State (and later find themselves in need of public assistance) do so for reasons wholly unrelated to the incidental benefits of public welfare which might be available to them. In most instances, they come to accept or seek employment in the State, to rejoin or join family relations, or for health reasons. Seeking new opportunities or established contacts, they find themselves temporarily in need of public assistance; they apply for such help, and it is denied to them.

(3) The cost to the Commonwealth of providing public assistance to those to

---

1. At the time suit was instituted, the identical provisions were contained in Section 9(a) (2) and 9(d) of the Act of June 24, 1937, as amended, 62 Purdon's Pa.Stat. Section 2508.1(6).

2. The Deputy Attorney General stated for the record at the conclusion of the

second hearing: "If I may say so, Your Honor, the witnesses that Mr. Gilhool [plaintiffs' counsel] called are the very people that I would rely on for my facts. The facts would be exactly the same." N.T. 135.

whom it is now refused because they have not been residents of the State for at least one year would be an insignificant portion of the present welfare budget—about one half of one per cent—and half of this amount would be absorbed by the Federal Government.

(4) Administrative costs and budgetary problems would actually be significantly decreased if the residence requirement were abolished; the necessity of screening and investigating applicants in this respect would be eliminated and the savings to the Department of Public Welfare in time and money would be substantial.

(5) The Commonwealth can ascribe no purpose at all to the distinction made by the Statute between residents who have lived in the State for over one year and residents who have not. The Attorney General's position is simply that the Legislature may allocate the State's resources in any way it wishes, and that it may discriminate freely among residents in the matter of public welfare benefits except with respect to the applicant's race, religion, or sex. Any other distinction or classification is permissible, argues the Attorney General, since the Legislature has the uncontrolled discretion to spend its money on whichever of its residents it chooses to favor.

\* \* \*

██ It is elementary constitutional doctrine that the Equal Protection Clause of the Fourteenth Amendment prohibits a State or instrumentalities of the State from invidious discrimination among its citizenry. Reitman v. Mulkey, 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830. There is, of course, no constitutional right to receive public welfare any more than there is a constitutional right to public education or even public police protection. However, if the State chooses to provide such public benefits, privileges, and prerogatives, it cannot arbitrarily exclude a segment of the resident population from their enjoyment. It is for this reason that classification in State statutes which purport to exclude from coverage one or more classes of individuals who would otherwise qualify for the advantages and opportunities conferred by the Legislature must be examined in order to determine whether there is any legitimate purpose for the distinction; whether an important and constitutionally cognizable State interest inheres in the classification, or whether on the other hand, the exclusion is purely arbitrary. Loving v. Commonwealth of Virginia, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); Carrington v. Rash, 380 U.S. 89, 93, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965); McLaughlin v. State of Florida, 379 U.S. 184, 196, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964). If the distinction is arbitrary, then the statute deprives the citizens so excluded of equal protection of the State's laws and of the benefits which those laws may impart. A discrimination without rational basis and without legitimate purpose or function is inherently invidious, and hence constitutionally interdicted.

██ In the context of the present case, we are totally at a loss to discern what purpose, if any, the Pennsylvania Legislature has ascribed to the one year residence requirement. To require a period of one year's residence as a condition to the receipt of public assistance results in the division of Pennsylvania residents into two classes: those who have lived in the State for one year and those who have lived in the State for less than one year. Such a distinction has no apparent purpose. See Green v. Department of Public Welfare, 270 F. Supp. 173 (Del.1967).[3] The Attorney General does not, of course, contend that its purpose is to erect a barrier against the movement of indigent persons into

3. See also Thompson v. Shapiro, 270 F. Supp. 331 (Conn.1967) (presently on appeal to the United States Supreme Court); Ramos v. Health & Social Services Bd., 276 F.Supp. 474 (Wis. 1967); Harrell v. Tobriner, 269 F.Supp. 919 (D.C.1967).

the State or to effect their prompt departure after they have gotten there and begun to realize the disadvantages of second-class citizenship. Such a purpose would be patently improper and its implementation plainly impermissible. The right to travel freely without deterrence is inherent in the notion of a unified nation, and no State may exclude citizens migrating from other States, whatever the reason for the migration. Edwards v. People of State of California, 314 U.S. 160, 62 S.Ct. 164, 86 L.Ed. 119 (1941); United States v. Guest, 383 U.S. 745, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1966). In any event, the proof mutually accepted by both sides in this case is that deletion of the residence requirement would not result in an influx of destitute relief-seekers.

 Nor is there any contention that the residence condition enhances the administrative effectiveness of the Public Assistance Act. To the contrary, all of the evidence is to the effect that many of the burdensome budgetary and administrative problems which are currently encountered by welfare officials in the conduct of the public assistance program would be substantially alleviated by the removal of this bottleneck in the processing of applicants. Moreover, the added cost to the Commonwealth of helping the now excluded class would be relatively insignificant. Needless to say, there would be some increase in cost. It is axiomatic that Pennsylvania does save some money now by excluding residents of less than one year. But the constitutional test of equal protection is not satisfied by considerations of minimal financial expediency alone. To be sure, the State may reduce or even eliminate entirely welfare payments if it chooses to conserve resources in this fashion; it may turn all beggars from its doors. But it may not arbitrarily turn away some who are in need while bestowing its charitable favors on others. There must be some otherwise legitimate purpose for excluding members of the class who are in fact deprived of the protection and privileges of existing laws. It is not enough to say that the class is excluded because money is saved.

Needy newcomers are no less needy because they are newly arrived. They are no less residents of the State because they have only lately begun to reside there. And they are no less entitled to enjoy the public welfare benefits of which every needy resident of Pennsylvania may partake simply because they have experienced their critical need soon after migrating to their new home.

We do not seek to substitute our judgment for that of the Pennsylvania Legislature. We merely find as an indisputable conclusion of fact, as well as of law, that the Legislature itself has ascribed no proper purpose to the one-year classification. If the classification is without purpose, it is arbitrary *per se* and offends the Equal Protection Clause.

The Pennsylvania residence requirement constitutes a manifest violation of the Equal Protection Clause; accordingly, the Commonwealth will be enjoined from its further enforcement.

SHERIDAN, District Judge (concurring).

I concur in holding that the Pennsylvania one-year residence requirement violates the Equal Protection Clause, and must be enjoined from further enforcement. I do not believe that any and all time limitations would be constitutionally interdicted. Rather, I am not convinced that on the present record a rational basis or legitimate purpose can be found in the budget-making function of the Legislature. The record reveals no other basis or purpose which would justify a one-year residence requirement in this kind of legislation.

KALODNER, Circuit Judge (dissenting).

By legislative enactment forty states of the Union and the District of Columbia[1] impose a one-year residence require-

I. District of Columbia Public Assistance Act of 1962, Title 3, Chapter 2, D.C. Code, § 3-203 "Eligibility for public as-sistance", enacted by Congress on October 15, 1962.

ment as a condition of eligibility to qualify for public assistance grants to needy families with children.

The Congress of the United States, in enacting legislation providing for federal contributions to such state administered public assistance programs has in specific terms provided that states may establish a one-year residence eligibility requirement.[2]

The majority now holds that the one-year residence requirement imposed by the Pennsylvania statute[3] is unconstitutional under the Equal Protection Clause of the 14th Amendment because in its view it "has no logical basis and is wholly arbitrary in its application to needy residents of the Commonwealth".

In striking down the Pennsylvania statutory provision, the majority has, in sum, substituted its judgment for that of the Pennsylvania legislature, the legislatures of its thirty-nine sister states, and last but not least, the Congress of the United States, which enacted the federal statute and the District of Columbia statutes.

The majority's action constitutes nothing less than judicial usurpation of the legislative function is presumptuous disregard of the doctrine of separation of powers so firmly established since the founding of our Republic and of the teaching of numerous decisions of the Supreme Court of the United States.

In my opinion, the majority's "fact-finding" that the statutory one-year residence requirement "has no logical basis and is wholly arbitrary", is entirely without evidentiary premise.

I am of the view that this Court should reject the plaintiffs' contention that the Pennsylvania statute is in contravention of the Fourteenth Amendment because the plaintiffs have failed to rebut the presumption of its constitutionality by proof that the statute "does not rest upon any reasonable basis, but is essentially arbitrary." Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 79, 31 S.Ct. 337, 340, 55 L.Ed. 369 (1911).

Discussion of the views stated must be prefaced by a statement of these settled principles to which a federal court must adhere in determining whether a statute contravenes the Fourteenth Amendment:

" * * * [T]he Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others", and "The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective."[4]

"State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality" and "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it".[5]

"Every presumption is to be indulged in favor of faithful compliance by Congress with the mandates of the fundamental law", and "Courts are reluctant to adjudge any statute in contravention of them." [6]

"One who assails the classification in a state statute "must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary." [7]

"A statute is not invalid under the Constitution because it might have gone farther than it did." [8]

2. Section 602(b), 42 U.S.C.A.

3. Section 432(6) of the Pennsylvania Public Welfare Code, Act of June 13, 1967.

4. McGowan v. State of Maryland, 366 U.S. 420, 425, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961).

5. Id. 425, 426, 81 S.Ct. 1105.

6. United States v. Butler, 297 U.S. 1, 67, 56 S.Ct. 312, 320, 80 L.Ed. 477 (1936).

7. Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78, 79, 31 S.Ct. 337, 340 (1911).

8. Roschen v. Ward, 279 U.S. 337, 339, 49 S.Ct. 336, 73 L.Ed. 722 (1929).

" * * * 'reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind.' " [9]

"Normally, the widest discretion is allowed the legislative judgment in determining whether to attack some, rather than all, of the manifestations of the evil aimed at; and normally that judgment is given the benefit of every conceivable circumstance which might suffice to characterize the classification as reasonable rather than arbitrary and invidious".[10]

Federal courts are not endowed with "authority to determine whether the Congressional [legislative] judgment * * * is sound or equitable, or whether it comports well or ill with the purposes of the Act", and the "wisdom or unwisdom" of a statute is an irrelevant factor in determining the issue of its constitutionality.[11]

The distilled essence of the stated principles is that legislatures are endowed with a wide range of discretion in enacting laws which affect some of its residents differently from others; [12] "every presumption" of constitutionality must be accorded by courts to a challenged law and the challenger bears the burden of proving that the law is irrational and "essentially arbitrary"; a statutory discrimination will not be declared unconstitutional "if any state of facts reasonably may be conceived to justify it"; the circumstance that a law "might have gone further than it did" in remedying a public social problem does not make it unconstitutional; and the "wisdom or unwisdom", soundness or unsoundness of the legislative judgment are irrelevant considerations in determining the issue of constitutionality.

The majority has not applied the stated principles in holding that the Pennsylvania one-year residence requirement contravenes the Fourteenth Amendment.

Its threshold errors are (1) failure to take into account the wide range of discretion vested in the Pennsylvania legislature; (2) failure to accord to the challenged statute the presumption of constitutionality; and (3) failure to give effect to the doctrine that a state may enact laws which affect some of its residents differently from others when the difference is not based on racial or religious considerations.

The majority has structured its ruling on these stated conclusions:

" * * * [W]e are totally at a loss to discern what purpose, if any, the Pennsylvania Legislature has ascribed to the one year residence requirement";

" * * *

the division of Pennsylvania residents into two classes: those who have lived in the State for one year and those who have lived in the State for less than one year * * * has no apparent purpose";

" * * * many of the burdensome budgetary and administrative problems" of public welfare officials "would be substantially alleviated by the removal of this bottleneck in the processing of applicants";

" * * * the added cost to the Commonwealth of helping the now excluded class would be relatively insignificant".

With respect to these "conclusions" this must be said:

The majority's failure to "discern" the legislative purpose in enacting the

9. Morey v. Doud, 354 U.S. 457, 465, 77 S.Ct. 1344, 1350, 1 L.Ed.2d 1485 (1957).

10. McLaughlin v. State of Florida, 379 U.S. 184. 191, 85 S.Ct. 283, 288 (1964).

11. Flemming v. Nestor, 363 U.S. 603, 611, 80 S.Ct. 1367, 1373, 4 L.Ed.2d 1435 (1960).

12. Except in instances where the differences are based on race, color or religion. Loving v. Commonwealth of Virginia, 388 U.S. 1, 87 S.Ct. 1817 (1967).

one-year residence requirement and its further failure to see any "apparent purpose" into "the division of Pennsylvania residents into two classes", do not afford an affirmative legal basis for its ultimate fact-finding that "Plaintiffs' evidence showed that the requirement of one year's residence as a condition to the receipt of public assistance has no logical basis and is wholly arbitrary in its application to needy residents of the Commonwealth".

‑‑Nor do the majority's conclusions that (1) Pennsylvania's "burdensome budgetary and administrative problems * * * would be substantially alleviated" if the legislature had not enacted the one-year residence requirement, and (2) " * * * the added cost to the Commonwealth of helping the now excluded class would be relatively insignificant", provide a premise for its holding of unconstitutionality. These conclusions are merely "judgment" conclusions which in effect substitute the judgment of a court for the judgment of the legislature. As earlier stated, the "wisdom or unwisdom" of a statute is an irrelevant consideration in determining the issue of unconstitutionality.

Coming now to my view that the challenged Pennsylvania statute must be held constitutional because the plaintiffs have failed to rebut the presumption of its constitutionality by adducing evidence that the statute "does not rest upon any reasonable basis but is essentially arbitrary".

The "evidence" relied on by the majority is not by any stretch of the imagination "evidence" within the meaning of that term. The majority has treated as "evidence" its "loss to discern" any "purpose" in the enactment of the legislation, and its "judgment" conclusion that Pennsylvania's "burdensome budgetary and administrative problems * * *

would be substantially alleviated" if the challenged residence requirement had not been enacted. The speculative evidence that the "added cost to the Commonwealth of helping the now excluded class would be relatively insignificant" is irrelevant to the determination of the constitutionality of the legislation.

The following "state of facts reasonably may be conceived to justify" the challenged statutory discrimination:[13]

The Pennsylvania Legislature annually enacts a budget for the following year which must limit the total of its appropriations to its estimated annual tax revenue, inasmuch as Pennsylvania's Constitution limits the Commonwealth's borrowing capacity to $1,000,000.

The Pennsylvania Legislature appropriated $199,800,000 of state revenues for public assistance grants for the fiscal year ending June 30, 1968—a significant percentage of the Commonwealth's annual budget.

The Legislature in its budget-making is required to make such an appropriation for public assistance as can be reasonably and intelligently estimated on the basis of these factors:

1. The estimated yield of state taxes.

2. The number of its residents currently receiving public assistance grants. They include needy families with dependent children, indigent aged and blind, permanently disabled persons between the ages of 18 and 64, and those who need assistance in the payment of bills for in-patient hospital and nursing home care, doctor, dentist, nursing and drug expenses.[14]

3. Increase in cost-of-living expenses of those on public assistance rolls which make necessary increased allotments.

4. Increase in the number of those receiving indigent aged assistance in

---

13. McGowan v. State of Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101.

14. The skyrocketing increase in hospitalization and medical expense during the past two years alone is evidenced by

the fact that the legislative allowance for these items alone leaped from $38,-600,000 in the fiscal year ending June 30, 1967 to $61,200,000 for the fiscal year ending June 30, 1968.

view of the extended life expectancy experienced in recent years.

It is a conceivable fact that in light of the foregoing factors the Pennsylvania Legislature enacted the one-year residence eligibility requirement to serve predictive purposes in making its appropriations for public assistance.

The foregoing establishes that the Pennsylvania one-year residence eligibility requirement "cannot be condemned as so lacking in rational justification as to offend due process". Flemming v. Nestor, 363 U.S. 603, 80 S.Ct. 1367 (1960). In that case the Supreme Court explicitly stated, at page 612, 80 S.Ct. at page 1373 that the factor of residence "can be of obvious relevance to the question of eligibility". It did so in ruling constitutional Section 202(n) of the Social Security Act, 42 U.S.C.A. § 402 (n), which provides for termination of old-age, survivor, and disability insurance benefits payable to, or in certain cases in respect of, an alien individual who is deported under § 241(a) of the Immigration and Nationality Act, 8 U.S.C.A. § 1251(a), on any one of certain grounds specified in § 202(n).

It is pertinent to call attention to the fact that Congress in enacting the Social Security Act provided, in Section 202(t), 42 U.S.C.A. § 402(t), for termination of benefits payable under the Act to any alien beneficiary who had resided outside the United States for more than six months.

For the reasons stated, I am of the opinion that the one-year residence eligibility requirement of Section 432(6) of the Pennsylvania Public Welfare Code, Act of June 13, 1967 does not contravene the Fourteenth Amendment.

This must be added. The majority's opinion does not advert to the plaintiffs' alternative claim that the one-year residence eligibility requirement is unconstitutional because it abridges their right of freedom to travel from one state to another.

In my opinion that alternative claim is so specious and unfounded that it does not merit extended discussion. It is only necessary to say that the Pennsylvania statute does not "prohibit" travel into the Commonwealth as evidenced by the facts that the plaintiffs in the instant case were freely permitted entry. The fact that the one-year eligibility requirement may operate to affect a decision to travel into Pennsylvania cannot by any stretch of the imagination be construed as a "statutory" bar to travel.