Richard A. **WESTBERRY**, and Sarah L. Westberry, individually and on behalf of their minor children, Pauline B. Westberry, David K. Westberry, Carolyn L. Westberry, Carol L. Westberry, John A. Westberry, Charles A. Westberry, Tina M. Westberry, Paul E. Westberry, Frank E. Westberry, Jean A. Westberry; June Martin, individually and on behalf of her minor children Jody Martin, Clyde Martin, Valerie Martin, Cindy Martin, Carl Martin, Dianne Martin, Wayne Martin, David Martin, and Robert Martin and on behalf of all others similarly situated, Plaintiffs,

v.

Dean **FISHER**, M.D., individually and in his capacity as Commissioner of the Maine State Department of Health and Welfare; Pauline Smith, individually and in her capacity as Director of the Division of Family Services of the Maine State Department of Health and Welfare; James Tierney, individually and in his capacity as District Director of the Division of Family Services, Portland Branch; David Jenny and Beverly Holloway, social workers of the Maine State Department of Health and Welfare, their agents, successors, and employees and all those in concert, Defendants.

Civ. A. No. 10–80.

United States District Court
D. Maine, S. D.
March 21, 1969.

Donald F. Fontaine, Portland, Me., William L. Robinson, New York City, for plaintiffs.

John W. Benoit, Asst. Atty. Gen., Augusta, Me., for defendants.

Before COFFIN, Circuit Judge, and GIGNOUX and CAFFREY, District Judges.

## OPINION

GIGNOUX, District Judge.

 This is a class action against the Commissioner and certain administrative personnel of the Maine State Department of Health and Welfare seeking a declaratory judgment, injunctive relief and

damages.[1] Jurisdiction is properly invoked under the Civil Rights Act, 28 U.S.C. § 1343(3) and (4), and 42 U.S.C. § 1983, and a three-judge District Court has been convened as required by 28 U.S.C. § 2281. King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). At issue is the validity of Maine's so-called "maximum grant" and "maximum budget" regulations, which provide, in substance, that under no circumstances may a family entitled to benefits under the State's Aid to Families with Dependent Children Program (AFDC) have a "budgeted need" of more than $300 per month, or receive a grant from the state in excess of $250 per month. Plaintiffs are members of a class composed of AFDC recipients who have large families and whose grants are limited by one or both of the two regulations. We hold that both regulations violate the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States, and accordingly that they are void and may no longer be enforced.[2]

## I

The AFDC program is one of the categorical public assistance programs established by the Social Security Act of 1935. 42 U.S.C. § 301 et seq.[3] The State of Maine participates in this program, 22 M.R.S.A. § 3741 (Supp.1968–69), and as required by the Social Security Act, 42 U.S.C. §§ 601–604, has adopted for its administration a body of regulations which are incorporated in the Maine Public Assistance Payments Manual, a document issued by the Division of Family Services of the Department of Health and Welfare. This manual contains a standard schedule for determining the monetary need, or "budgeted requirements," of a recipient family in order to provide it with a "reasonable subsistence compatible with decency and health." In the absence of special circumstances, the schedule fixes the budgeted requirements of a two-adult family at $40 for each adult; $30 for the first child; and $27 for the second and each additional child.[4] From the figure thus obtained, the State deducts any other income available to the family. The remainder is the AFDC grant. However, Maine has also adopted the "maximum budget" and "maximum grant" regulations here under attack. The maximum budget regulation provides that the budgeted requirements of a family unit cannot exceed $300 per month. The maximum grant regulation provides that

---

1. The parties have agreed that any determination of damages can await our disposition of plaintiffs' claims for declaratory and injunctive relief.

2. In view of this conclusion, we do not reach the question of whether, as plaintiffs assert, the regulations also violate the Due Process or the Privileges and Immunities Clause of the Fourteenth Amendment. Nor do we decide whether, as plaintiffs also contend, the regulations are invalid because inconsistent with certain provisions of the Social Security Act, 42 U.S.C. §§ 601–609. We recognize our normal obligation to dispose of cases, if possible, on statutory rather than constitutional grounds. However, for the reasons set forth in the supplemental opinion of the court in Williams v. Dandridge, 297 F.Supp. 450 (D.Md. original opinion December 13, 1968; supplemental opinion February 25, 1969), we also are in substantial doubt as to whether regulations such as these are inconsistent with the Social Security Act. As in that case, the limited record which counsel have presented to us here is insufficient to permit us to resolve this issue, and we prefer not to delay the disposition of this important case. Since the regulations so plainly conflict with the Equal Protection Clause, we choose to rest our decision on that ground.

3. A comprehensive discussion of the background and scope of the AFDC program may be found in King v. Smith, *supra*.

4. For a one-adult or a no-adult family, the need is fixed at $40 for the first child; $30 for the second child; and $27 for each additional child. As the discussion of the Westberry and Martin families reveals, special circumstances play a considerable role in the actual determination of final budgeted requirements.

the maximum grant permitted is $250 per month.[5]

The operation of these two regulations is demonstrated by their effect on the AFDC grants of the two plaintiff families. Plaintiff Richard Westberry and his wife Sarah began receiving AFDC payments for themselves and their ten children in April, 1965, when Mr. Westberry became totally and permanently disabled, because of illness. The State has determined that the Westberry family has actual budgeted requirements of $643.86 per month. However, pursuant to the maximum budget regulation this figure is adjusted downward to $300, which then becomes, for the State's purposes, the family's total budgeted requirements. The State then deducts from this figure $156.62, which is the only other income, a Social Security disability benefit, available to the family. The remainder, approximately $144 per month, is the authorized AFDC grant. This amount, together with the Westberrys' Social Security disability payment, falls short of their actual budgeted monthly needs by around $345.

Plaintiff June Martin has received AFDC payments for herself and her nine children since June 1949. Under the standard schedule for calculating need, the State has determined that the actual budgeted requirements of the Martin family are $514.36 per month. The maximum budget regulation reduces this figure to $300. Because of the maximum grant regulation the Martins, who have no other income, receive an AFDC grant, not of $300, but of $250 per month. As a result of the combined application of the two regulations, the Martins' grant is limited to less than half their actual budgeted requirements.

II

It is evident that the effect of the two challenged regulations is that families with a large number of dependent children receive less favorable treatment under Maine's AFDC program than families with a small number of dependent children.[6] For practical purposes, the maximum grant regulation means that a two-adult family with six or less dependent children is entitled to a payment of $27 for each dependent child after the first, whereas a two-adult family with seven or more dependent children receives only $5 additional for the seventh dependent child and no further payments for any dependent children in excess of seven.[7] It is readily apparent that the maximum grant regulation thus creates two classes of persons—families with six or less dependent children and families with seven or more dependent children—and subjects the larger families to different treatment than the small families. For the small families the amount of their grant will more likely approximate their actual budgeted requirements. But the larger the family, the greater the inevitable gap between their budgeted need and the flat maximum grant of $250 per month.

The discriminatory impact of the maximum grant regulation upon large fam-

5. The two regulations are succinctly set forth in the Maine Public Assistance Payments Manual (Rev. 7/1/68), ch. III, sec. A, p. 3:

Administrative regulation requires downward adjustment to $300 for the entire family if budgeted requirements exceed $300. The maximum actual payment cannot exceed $250.

6. The Social Security Act makes it clear that the beneficiaries of AFDC are to be the "dependent children" in needy families. King v. Smith, *supra* at 313, 88 S. Ct. 2128; Williams v. Dandridge, *supra* at n. 9 (original opinion); *see also* Collins v. State Board of Social Welfare,

248 Iowa 369, 81 N.W.2d 4, 8 (1957). Technically, therefore, the dependent children subsequent to the sixth child (in a two-adult family) are the ones deprived by the two Maine regulations. However, it is obvious that the effect of the discrimination worked by the regulations is borne by the entire family.

7. Similarly, a one-adult family receives only $5 for an eighth dependent child and no payments for any additional dependent children; a no-adult family receives only $18 for a ninth dependent child and no payments for any additional dependent children.

ilies is frequently aggravated by the maximum budget regulation. The effect of the latter regulation is that a family whose actual budgeted need exceeds $300 per month may not have more than $50 income from other sources without suffering a concomitant reduction in the maximum grant of $250 to which it would otherwise be entitled.[8] In the case of smaller families, the deduction of other income from budgeted need to ascertain the amount of the AFDC grant has the effect merely of insuring that an AFDC grant will not swell a family's total income beyond its budgeted need. In the case of larger families, the fact that the AFDC grant is computed by deducting other income, not from actual need, but from the lower arbitrary maximum budget figure of $300, doubly insures a widening disparity, both absolutely and proportionately, between total income and need. The regressive impact of this regulation is shown in the table in the margin.[9]

■■■ Under established constitutional principles, Maine cannot, consistent with the Equal Protection Clause, discriminate in this manner against a specially selected class of persons unless it does so pursuant to some legitimate state interest, and unless the basis for the classification is reasonably relevant to this legitimate interest. Truax v. Raich, 239 U.S. 33, 36 S.Ct. 7, 60 L.Ed. 131 (1915); Morey v. Doud, 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1957); Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968). The classification drawn by the state, if it is not to contravene the Equal Protection Clause, must be reasonable in light of its purpose. McLaughlin v. Florida, 379 U.S. 184, 191, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964). While a state may classify persons for various purposes, it may not do so upon arbitrary or irrational grounds. Yick Wo v. Hopkins, 118 U.S. 356, 6 S. Ct. 1064, 30 L.Ed. 220 (1886); Gulf, Colorado and Santa Fe Ry. v. Ellis, 165 U.S. 150, 17 S.Ct. 255, 41 L.Ed. 666 (1897); Carrington v. Rash, 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965). As the Supreme Court most recently stated in Levy v. Louisiana, *supra*, 391 U.S. at 71, 88 S.Ct. at 1511:

> While a State has broad power when it comes to making classifications * * *, it may not draw a line which constitutes an invidious discrimination against a particular class. * * * Though the test has been variously stated, the end result is whether the line drawn is a rational one.[10]

8. The grants to recipient families who have budgeted requirements in excess of $300 and other income of $50 or less will be limited solely by the maximum grant regulation.

| | | | | | | |
|---|---|---|---|---|---|---|
| 9. 1. Actual family budgeted need per month. | $200 | $250 | $300 | $400 | $500 | $600 | $700 |
| 2. Amount from which other income is to be deducted (actual budget up to maximum $300) | 200 | 250 | 300 | 300 | 300 | 300 | 300 |
| 3. Less other income | 100 | 100 | 100 | 100 | 100 | 100 | 100 |
| 4. Amount of AFDC grant (2 minus 3) | 100 | 150 | 200 | 200 | 200 | 200 | 200 |
| 5. Total family income (3 plus 4) | 200 | 250 | 300 | 300 | 300 | 300 | 300 |
| 6. Unmet need (1 minus 5) | — | — | — | 100 | 200 | 300 | 400 |
| 7. Percent of unmet need | 0 | 0 | — | 25% | 40% | 50% | 57% |

10. In Levy v. Louisiana, the Supreme Court held invalid under the Equal Protection Clause a Louisiana wrongful death statute which denied recovery to illegiti-

See also Glona v. American Guarantee and Liability Ins. Co., 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed.2d 441 (1968).

The classifications created by the Maine maximum grant and maximum budget regulations bear no reasonable relation to the purposes of the federal and state AFDC program. The purpose of the federal AFDC program, as set forth in the Social Security Act, 42 U.S.C. § 601, is to provide financial support for needy children who have been deprived of parental support.[11] The Maine statute makes clear that the state purpose is the same as the federal purpose. 22 M.R.S.A. § 3741 (Supp. 1968–69).[12] In furtherance of this purpose, the State has determined the actual needs of a first dependent child (in a two-adult family) to be $30 per month, and of each additional dependent child to be $27 per month.[13] In its standard schedule of need, the State does not suggest that the need of a seventh or eighth dependent child is any less than that of a third or fourth dependent child.[14] Yet the effect of the two maximum regulations is to deny a dependent child, because he is the seventh or eighth (or any subsequent number), the payment which the State has found necessary if he is to live in "decency and health." The regulations thus create a class of needy children who receive a lesser amount of public assistance than do other children who are in all respects similarly situated, except that they live in smaller families. Such a result cannot be reconciled with the purposes of the AFDC program.[15]

■ The only apparent purpose to be served by the challenged regulations is to protect the state treasury against the burgeoning costs of public welfare. But the regulations cannot be sustained on

mate children while permitting recovery to lawful issue.

11. 42 U.S.C. § 601 states that the purpose of AFDC is:

For the purpose of encouraging the care of dependent children in their own homes or in the homes of relatives by enabling each State to furnish financial assistance and rehabilitation and other services, as far as practicable under the conditions in such State, to needy dependent children and the parents or relatives with whom they are living to help maintain and strengthen family life and to help such parents or relatives to attain or retain capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care and protection * * *.

12. In 1967 the Maine Legislature repealed the various detailed statutory provisions dealing with the AFDC program (22 M.R.S.A. §§ 3741–3749) and replaced them with the present 22 M.R.S.A. § 3741, which provides simply: "The department is authorized to administer and operate a program of aid to dependent children within the Social Security Act and any amendments and additions thereto." P.L. Me. 1967, ch. 459.

13. For a one-adult or a no-adult family, see n. 4, *supra*.

14. Concededly, the per capita need of a large family may not be quite as great as that of a small family, because certain expenses, such as rent and heat, tend to remain relatively stable. However, the standard schedule of grants makes no such distinction with respect to the second, third, fourth, fifth or sixth child, and there is no rational basis for a determination that the need of a seventh child is only $5, or that any child in excess of seven has no additional need. *See* Williams v. Dandridge, *supra* at 16–17 (original opinion).

15. Plaintiffs also contend that both regulations are in conflict with one of the prevailing policies underlying the AFDC program, the preservation intact of the family unit. See S.Rep.No.628, 74th Cong., 1st Sess. 4 (1935); H.R.Reg.No.615, 74th Cong., 1st Sess. 24 (1935). We agree. As the Court noted in Williams v. Dandridge, *supra* at 11–12 (original opinion):

(T)he maximum grant regulation provides a powerful economic incentive to break up large families by placing "dependent children" in excess of those whose subsistence needs, when added to the subsistence needs of other members of the family, exceed the maximum grant, in the homes of persons included in the class of eligible relatives (see 42 U.S.C. § 606(a) (1964 ed., Supp. 11)). If this is done, the pernicious effect of the maximum grant regulation is avoided, but the purpose of keeping them in their own home is defeated.

this basis. The protection of the public purse is a valid, indeed necessary, purpose relevant to all public programs. But it may not be accomplished by arbitrarily singling out a particular class of persons to bear the entire burden of achieving that end. Rinaldi v. Yeager, 384 U.S. 305, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1966); *cf.* Edwards v. California, 314 U.S. 160, 62 S.Ct. 164, 86 L.Ed. 119 (1941). In King v. Smith, *supra,* 392 U.S. at 334, 88 S.Ct. 2128, the Supreme Court rejected the argument that a similar purpose justified the "substitute father" regulation in Alabama's AFDC program. In the recently decided welfare residence law cases, the courts have repeatedly stated that conservation of the public funds does not permit disparate treatment of persons similarly situated. Thompson v. Shapiro, 270 F. Supp. 331, 337 (D.Conn.1967), *prob. juris. noted,* 389 U.S. 1032, 88 S.Ct. 784, 19 L.Ed.2d 820 (1968); Smith v. Reynolds, 277 F.Supp. 65, 68 (E.D.Pa.1967), *prob. juris. noted,* 390 U.S. 940, 88 S.Ct. 1054, 19 L.Ed.2d 1129 (1968); Harrell v. Tobriner, 279 F.Supp. 22, 28–29 (D.D.C.1967), *prob. juris. noted sub nom.* Washington v. Harrell, 390 U.S. 940, 88 S.Ct. 1053, 19 L.Ed.2d 1129 (1968); Green v. Department of Public Welfare, 270 F.Supp. 173, 177 (D.Del.1967); *cf.* Robertson v. Ott, 284 F.Supp. 735, 738–39 (D.Mass.1968).[16] As the court said in Smith v. Reynolds, *supra,* 277 F.Supp. at 68:

> It is axiomatic that Pennsylvania does save some money now by excluding residents of less than one year. But the constitutional test of equal

protection is not satisfied by considerations of minimal financial expediency alone. To be sure, the State may reduce or even eliminate entirely welfare payments if it chooses to conserve resources in this fashion; it may turn all beggars from its doors. But it may not arbitrarily turn away some who are in need while bestowing its charitable favors on others. There must be some otherwise legitimate purpose for excluding members of the class who are in fact deprived of the protection and privileges of existing laws. It is not enough to say that the class is excluded because money is saved.

■ We see no other rational basis for the distinction made by these regulations between dependent children in small families and dependent children in large families, and the State of Maine has suggested none.[17] The Attorney General's position is simply that, since there is no vested right to public welfare, the State may distribute its largesse in any way it wishes and among any of its citizens it chooses to favor. But the authorities are to the contrary. Unquestionably, there has historically been no vested right to public welfare. However, once a state elects to establish a program of public assistance, it must meet constitutional standards; it cannot arbitrarily deny to a portion of its citizens the benefits of such a program. See Sherbert v. Verner, 374 U.S. 398, 404–06, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963); Speiser v. Randall, 357 U.S. 513, 518–19, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958); Thorpe v. Housing Authority of the

---

16. As of this writing the Supreme Court has heard argument and reargument in the Thompson, Smith and Harrell (now Washington v. Legrant, *see* 392 U.S. 920, 88 S.Ct. 2278, 20 L.Ed.2d 1381 (1968)) cases, which are now awaiting decision.

17. If another purpose were apparent which would satisfy constitutional requirements, we would rest our decision upon it. But we have found none. If we were to consider that the regulations were designed to discourage welfare recipients from having large families, and if we were to assume that this were a proper state purpose, *see* Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); *cf.* King v. Smith, *supra* 392 U.S. at 320–27, 88 S.Ct. 2128, the regulations are unnecessarily limited, in that they affect only welfare recipients, and unnecessarily broad, in that they affect families which are already large when they become eligible for AFDC. *See* Williams v. Dandridge, *supra* at 26 (supplemental opinion).

City of Durham, 386 U.S. 670, 678–79, 87 S.Ct. 1244, 18 L.Ed.2d 394 (1967) (concurring opinion); Note, Unconstitutional Conditions, 73 Harv.L.Rev. 1595, 1599–1602 (1960). The welfare residence law cases to which we have referred are recent reaffirmations of this proposition. *See also* Smith v. King, 277 F.Supp. 31, 38, 40 (M.D.Ala.1967) *aff'd*, King v. Smith, *supra*.

For the foregoing reasons, we conclude that Maine's maximum grant and maximum budget regulations are void and unenforceable because they deny plaintiffs the equal protection of the laws guaranteed to them by the Fourteenth Amendment to the Constitution of the United States. In so holding, we note that other courts which have considered the constitutional validity of similar regulations have arrived at the same conclusion. Williams v. Dandridge, *supra*, Dews v. Henry, 297 F.Supp. 587 (D.Ariz.) filed March 13, 1969; Collins v. State Board of Social Welfare, *supra*; *cf.* Metcalf v. Swank, 293 F.Supp. 268 (N.D.Ill.1968) (dictum).[18]

We are aware that the impact of our decision upon the State's AFDC program, in the absence of an additional appropriation, may mean some reduction in the amount of grants to many present recipients.[19] We also recognize that "States have considerable latitude in allocating their AFDC resources", and that "each State is free to set its own standard of need and to determine the level of benefits by the amount of funds it devotes to the program." King v. Smith, *supra* 392 U.S. at 318–19, 88 S.Ct. at 2134. We emphasize that Maine is free to take reasonable steps, as other states have done,[20] to allocate on a nondiscriminatory basis its resources available for AFDC. We say only that the State has chosen an improper means to do so.

Judgment will be entered for the plaintiffs declaring Maine's maximum grant and maximum budget regulations unconstitutional and void, and enjoining the defendants from their further enforcement. Plaintiffs may submit a proposed form of decree, with notice to defendants, within ten days. Defendants may present their comments thereon within five days thereafter.

---

18. In Williams v. Dandridge and in Dews v. Henry, three-judge courts in the District of Maryland and the District of Arizona, respectively, have held that the maximum grant provisions of those states are inconsistent with the Equal Protection Clause of the Fourteenth Amendment. In Collins v. State Board of Social Welfare, the Supreme Court of Iowa ruled that the Iowa maximum grant provision violated the Equal Protection Clause of the Iowa State Constitution. In Metcalf v. Swank, a three-judge court in the Northern District of Illinois indicated in dictum that a statute setting a flat $90 shelter allowance maximum would violate the Equal Protection Clause. Other litigation questioning the validity of regulatory maxima is pending in at least six other United States District Courts. Purvis v. Washington, Civil No. 722–68 (D.D.C., filed March 21, 1968); Robinson v. Hackney, Civil No. 68–H–294 (S.D.Tex., filed April 2, 1968); Lindsey v. Smith, Civil No. 7636 (W.D.Wash., filed April 3, 1968); Kaiser v. Montgomery, Civil No. 49613 (N. D.Cal., filed July 16, 1968); Thomas v. Burson, Civil No. 2381 (M.D.Ga., filed July 29, 1968); Ward v. Winstead, GC6829 (N.D.Miss., filed Aug. 12, 1968).

19. The record does not disclose how substantial the impact may be. However, it has been stipulated that, as of August 1, 1968, there were 6,180 families in Maine receiving AFDC payments; that as of December 31, 1967, 24.6% of the families receiving AFDC payments in Maine had budgeted requirements of more than $300 per month; and that as of October 1, 1967 there were 52 families in Maine receiving the maximum AFDC grant of $250 per month.

20. We are advised that seven states have regulations providing simply for percentage reductions or similar nondiscriminatory methods for limiting need standards or grants.